# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 100 PENSION TRUST FUND, et al., | 1:07cv01342 LJO GSA |
| Plaintiffs, | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |
| v. | (Document 18) |
| VILLA ELECTRIC, INC., a California Corporation, | |
| Defendant. | |

Plaintiffs Board of Trustees of IBEW Local Union No. 100 Pension Trust Fund, IBEW Local Union No. 100 Health and Welfare Trust Fund, Joint Electrical Industry Training Trust Fund, National Electrical Benefit Fund and Board of Trustees of IBEW District No. 9 Pension Plan Trust Fund (collectively "Plaintiffs") filed the instant motion for default judgment on March 13, 2008. Plaintiffs also filed a memorandum and the Declarations of G. Andrew Slater, Lorena Cervantez and John Hutson in support of the motion for default judgment. Defendant Villa Electric, Inc. ("Defendant") did not file a response to the motion or otherwise respond.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs are named fiduciaries and plan administrators of employee benefit plans ("Trust Funds"). Plaintiffs filed this action on September 14, 2007, pursuant to the Labor Management Relations Act of 1947 ("NLRA") [29 U.S.C. § 185(a)], the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. § 1132] and the Federal Declaratory Judgment Act

[28 U.S.C. § 2201, *et seq*.].  Plaintiffs bring this action on behalf of fiduciaries, participants and beneficiaries of the Trust Funds.

Defendant Villa is a signatory (or successor in interest to a signatory) to a Letter of Assent, binding Villa to comply with the Collective Bargaining Agreement ("CBA") in effect between the International Brotherhood of Electrical Workers Local Union 100 ("IBEW Local 100") and the East Central California Chapter of the National Electrical Contractors Association for the period from March 2000 to the present.  Complaint, at ¶ 5.  The CBA obligated Villa to make contributions to the trust funds for all persons performing services in any classifications covered by the CBA.  Complaint, at ¶¶ 5 and 6.  Villa also was obligated to provide the trust funds with an accounting on or before the 15th of each month identifying all persons performing services in any classification covered by the CBA and the contributions made on their behalf.  Complaint, at ¶ 6.

Plaintiffs allege that Villa performed services within the jurisdiction of IBEW Local 100 in August 2006.  Plaintiffs further allege that Villa is delinquent in paying contributions to the Trusts Funds (and a vacation fund)[1] beginning on September 16, 2006.  Complaint, at ¶ 8.  Villa submitted an accounting for the month of August 2006, which showed that Villa owed a contribution amount for August 2006 of $8,507.70.  Complaint, at ¶ 9.

In April 2007, the parties entered into a settlement agreement for the payment of amounts owed by Villa to the trust funds.  Complaint, at ¶ 10.  Plaintiffs performed its obligations under the settlement agreement, but Villa failed to make payment to the trust funds in accordance with the settlement agreement.  Complaint, at ¶¶ 12-13.

Plaintiffs contend that they are entitled to damages, interest on the unpaid contributions, and attorney's fees and costs.

Villa failed to appear or otherwise defend this action.  On December 3, 2007, the Clerk of the Court entered default against Villa.

---

[1] Reference to a vacation fund appears to be in error.

Plaintiffs filed the instant motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) on March 13, 2008. Villa was served with the motion by mail, but has failed to respond or otherwise communicate with the court. Villa, an incorporated entity, is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

## DISCUSSION

A.     Adequacy of Service of Process

As a preliminary matter, the court should first assess the adequacy of the service of process on the party against whom default is requested. Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process and--if the agent is one authorized by statute to receive service and the statute so requires--by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4. Here, Plaintiffs personally served Lazaro Lee Villa, agent for process for Villa, on October 8, 2007. As such, service of process was adequate.

B.     Merits of Motion for Default Judgment

    1.    *Legal Standard*

Plaintiffs move for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that judgment may be entered:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or competent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

"Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

As discussed below, the *Eitel* factors support a default judgment.

2.  *Merits and Sufficiency of the Complaint*

Plaintiffs' complaint establishes that Villa is a signatory to a Letter of Assent, binding Villa to comply with the CBA between IBEW Local 100 and the East Central California Chapter of the National Electrical Contractors Association. *See also* Declaration of John Hutson ("Hutson Decl.") ,¶ 2; Declaration of Lorena Cervantez ("Cervantez Decl."), at ¶ 2. The CBA obligated Villa to make contributions to the trust funds for all persons performing services in any classifications covered by the CBA and to provide the trust funds with an accounting. *See* Hutson Decl., at ¶ 5; Cervantez Decl., at ¶¶ 2, 5.

Plaintiffs allege that Villa performed services within the jurisdiction of IBEW Local 100 in August 2006. Plaintiffs further allege that Villa is delinquent in paying contributions to the trust funds beginning September 16, 2006. Complaint, at ¶ 8; Hutson Decl., at ¶ 4; Cervantez Decl., at ¶ 4. Villa submitted an accounting for the month of August 2006, which showed that Villa owed a contribution amount for August 2006 of $8,507.70. Complaint, at ¶ 9; Hutson Decl., at ¶ 5; Cervantez Decl., at ¶ 5.

In April 2007, the parties entered into a settlement agreement ("Settlement Agreement") for the payment of amounts owed by Villa to the Trust Funds. Under the Settlement Agreement, Villa agreed to make payments to the trust funds for a total amount owed of $10, 818.27. Ex. A

to Complaint (Settlement Agreement, at Section III. (1.)).  Villa made payments under the Settlement Agreement in the amount of $1,000.00, but defaulted on the remainder of the payments.  Complaint, at ¶ 14; Hutson Decl., at ¶ 7; Cervantez Decl., at ¶ 7.  Upon default, the amount of $10,818.27 became immediately due and owing (minus any payments made by Villa).  Complaint, at ¶ 13, and Ex. A (Settlement Agreement, at Section III. (4.); Hutson Decl., at ¶ 8; Cervantez Decl., at ¶ 8.

Accepting the allegations in Plaintiffs' complaint regarding liability as true, Plaintiffs have stated a claim for relief.  ERISA authorizes actions by fiduciaries on behalf of benefit plans to enforce an employer's obligation to make contributions to a multiemployer plan under the terms of the plan or a collective bargaining agreement.  29 U.S.C. ¶¶ 1132(a)(3) and (d)(1); 29 U.S.C. ¶ 1145.  Plaintiffs contend that Villa was required by the CBA and the settlement agreement to remit payments to the trust funds, but failed to do so.  Thus, pursuant to ERISA and the settlement agreement, Villa is liable to the trust funds.

  2. <u>Remaining Factors</u>

The remaining *Eitel* factors also favor entry of default judgment.  First, if the motion were denied, Plaintiffs would likely be prejudiced.  As Villa has not answered, Plaintiffs would be without a remedy, and the participants and beneficiaries of the Trust Funds would not receive their full benefits.

Second, there is no indication that Villa's default was due to excusable neglect.  Plaintiffs filed the complaint on September 14, 2007, and personally served Villa's agent for service of process with the summons and complaint.  Plaintiffs also provided notice of the instant motion for default judgment.  Villa has not responded to the complaint, to the motion or otherwise contacted the court.

Third, because Villa has not filed an answer to the complaint, but has agreed to the amounts due and owing in the settlement agreement, there is nothing to suggest a dispute concerning material facts.

Fourth, the sum of money at stake in this action is not substantial.  A default judgment generally is disfavored if there is a large sum of money involved.  *See Eitel*, 782 F.2d at 1472

(denying motion for default in part due to amount sought, which totaled almost $3 million in damages). When Plaintiffs filed their motion for default judgment, they sought a total of $13,556.68, which does not approach the amount at issue in *Eitel*.

### 3. <u>Requested Relief</u>

Plaintiffs seek judgment in the amount of $13,556.68, calculated as follows:

| | | | |
|---|---|---|---:|
| 1. | Principal | $ | 9,818.27 |
| 2. | Interest | $ | 664.41 |
| 3. | Attorney's Fees | $ | 2,724.00 |
| 4. | Costs and Expenses of Suit | $ | 350.00 |

According to the Trust Funds' administrators, the Trust Funds are owed $13,556.68 based on the settlement agreement, which includes attorney's fees and interest on the amount owed under the settlement agreement. Hutson Decl., at ¶ 11; Cervantez Decl., at ¶ 10. As discussed below, however, it is recommended that the amount of attorney's fees be reduced to $1,356.00. Accordingly, Plaintiffs' relief would total $12,200.68.

#### a. *Unpaid Contributions*

Villa, by its default, has admitted that it failed to properly remit payments on behalf of employees covered by the CBA and the Settlement Agreement. Upon default, the settlement agreement indicates that the principal amount due and owing is calculated as $10,818.27 less payments made by Villa. Both Mr. Hutson and Ms. Cervantez declare that the principal amount of delinquent contributions owed to the trust funds based on the settlement agreement totals $10,818.27 less payments made by Villa. Hutson Decl., at ¶ 8; Cervantez Decl., at ¶ 8. Villa made payment of $1,000.00, thereby resulting in an unpaid amount of $9,818.27.

#### c. *Interest*

Plaintiffs seek interest on the unpaid contributions at the rate of 10% per year. The representative trust agreement provides that an employer in default "may be required, at the discretion of the Trustees, to pay such reasonable rate of interest as the Trustees may fix on the monies due." Cervantez Decl., Ex. C, at ¶ 6.03; *see also* 29 U.S.C. § 1132(g)(2) (fiduciary who prevails in a § 1145 claim is entitled to "interest on unpaid contributions"). In the event of

default, the Settlement Agreement provides for payment of interest accruing after March 31, 2007, on the unpaid contributions for August 2006. Ex. A. to Complaint (Settlement Agreement, at Section III.(4.)). The Settlement Agreement applied a 10% interest rate prior to March 31, 2007. Ex. A. to Complaint (Settlement Agreement, at Section III.(1.)). The supporting declaration of Mr. Hutson provides that interest on unpaid contributions totals $664.41 for the period from March 31, 2007 through December 3, 2007. Hutson Decl., at ¶ 9.

        d.    *Attorneys' Fees and Costs*

The Settlement Agreement provides that Plaintiffs are entitled to recover attorney's fees and costs incurred when filing suit based on the agreement. Ex. A. to Complaint (Settlement Agreement, at Section III.(4.)). Plaintiffs seek attorney's fees in the amount of $2,724.00. In support of this award, Plaintiffs submitted the declaration of its attorney, G. Andrew Slater ("Slater Decl."), along with billing statements from November 2, 2006 to March 13, 2008. Ex. C. to Slater Decl. It appears from the billing statements that Plaintiffs seek attorney's fees incurred prior to entering into the Settlement Agreement in April 2007. However, the total amount owed under the Settlement Agreement includes an amount of $1,000.00 in attorney's fees incurred to collect contributions and is included in the *principal* amount requested herein by Plaintiffs. Ex. A. to Complaint (Settlement Agreement, at Section II.(C.)). Accordingly, it would appear reasonable to reduce the amount of attorney's fees requested by counsel to amounts incurred *after* breach of the Settlement Agreement for enforcement. Beginning in July 2007, Plaintiffs' counsel expended 11.3 hours at a rate of $120.00 for a total amount in attorney's fees of $1,356.00. See *Kemmis v. McGoldrick,* 706 F.2d 993, 997 (9th Cir.1983) (award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions).

        d.    *Costs of Suit*

Plaintiffs' also seek costs associated with this action in the amount of $350.00, which is equal to the amount of the filing fee in this matter. The Settlement Agreement provides for costs in connection with suit. Ex. A. to Complaint (Settlement Agreement, at Section III.(4.)).

**CONCLUSION**

For the reasons discussed above, the Court RECOMMENDS that:

1. Plaintiffs' motion for default judgment in favor of Plaintiffs and against Defendant Villa Electric, Inc., be GRANTED;

2. Plaintiffs be AWARDED principal in the amount of $ 9,818.27;

2. Plaintiffs be AWARDED interest in the amount of $664.41;

2. Plaintiffs be AWARDED costs in the amount of $350.00;

3. Plaintiffs be AWARDED attorneys' fees in the amount of $1,356.00.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. Within fifteen (15) court days of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 19, 2008**            /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE